UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v.-<br><br>ILYA KOGAN and ASHRAF HASAN-HAFEZ,<br><br>Defendants, | 16 Cr. 221 (KPF)<br><br>**OPINION AND ORDER** |
| IRINA KOGAN and GELAN ABDRABO,<br><br>Third-Party Petitioners. | |

KATHERINE POLK FAILLA, District Judge:

On March 16, 2018, Defendants Ilya Kogan and Ashraf Hasan-Hafez (hereinafter, "Defendant Kogan" and "Defendant Hasan-Hafez," and together, "Defendants") were convicted of health care fraud in violation of 18 U.S.C. §§ 1347 and 2, and conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349.  At sentencing, Defendants were each ordered to forfeit $1,297,000.00.  To satisfy the money judgments against Defendants, the Government issued Preliminary Orders of Forfeiture listing each Defendant's home as a "Substitute Asset" pursuant to 21 U.S.C. § 853(p).  In response, each Defendant's wife — Petitioner Irina Kogan, who is married to Ilya Kogan; and Petitioner Gelan Abdrabo, who is married to Ashraf Hasan-Hafez — submitted a petition requesting a hearing pursuant to 21 U.S.C. § 853(n)(2) to adjudicate their interest in the property at issue.  The Government has moved for judgment on the pleadings with respect to both petitions, and Abdrabo cross-moves for summary judgment.  For the reasons set forth below, the

Court denies the Government's motions for judgment on the pleadings and Abdrabo's cross-motion for summary judgment.

## BACKGROUND[1]

### A. Factual Background

On February 14, 2018, Defendants Ilya Kogan and Ashraf Hasan-Hafez were charged with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, and health care fraud in violation of 18 U.S.C. §§ 1347 and 2. (Dkt. #162 at ¶¶ 1-4). Defendants were alleged to have engaged in the charged conduct during the approximate time period of January 2010 through August 2013. (*Id.* at ¶¶ 1, 3).

On March 16, 2018, each Defendant pleaded guilty to both counts of a superseding indictment, S2 16 Cr. 221, pursuant to a plea agreement with the Government. (*See* Kogan Forfeiture Order 1; Hasan-Hafez Forfeiture Order 1). On March 19, 2018, the Court entered an Order of Forfeiture against each Defendant imposing a money judgment of $1,297,000.00. (*Id.*). This sum

---

[1] For ease of reference, the Court refers to Petitioner Kogan as "Kogan" and Defendant Kogan as "Defendant Kogan." The Court also refers to the Government's Preliminary Order of Forfeiture as to Defendant Kogan's Substitute Asset as "Kogan Forfeiture Order" (Dkt. #269); the Government's Preliminary Order of Forfeiture as to Defendant Hasan-Hafez's Substitute Asset as "Hasan-Hafez Forfeiture Order" (Dkt. #268), Kogan's petition and request for a hearing pursuant to 21 U.S.C. § 853(n)(2) as "Kogan Pet." (Dkt. #274); Abdrabo's petition and request a hearing pursuant to 21 U.S.C. § 853(n)(2) as "Abdrabo Pet." (Dkt. #276), the Government's motion for judgment on the pleadings with respect to Kogan's petition as "Gov't Kogan Br." (Dkt. #283); the Government's motion for judgment on the pleadings with respect to Abdrabo's petition as "Gov't Abdrabo Br." (Dkt. #284); Kogan's memorandum of law in opposition to the Government's motion as "Kogan Opp." (Dkt. #292); Abdrabo's memorandum of law in opposition to the Government's motion and in support of Abdrabo's cross-motion for summary judgment as "Abdrabo Opp." (Dkt. #294); and the Government's combined reply brief as "Gov't Reply" (Dkt. #301). The Court also considers Kogan's and Abdrabo's sur-replies to the Government's combined reply brief. (*See* Dkt. #307 (Kogan), 306 (Abdrabo)).

represented the proceeds traceable to each Defendant's criminal conduct. (*Id.*). Both judgments remain unpaid. (*Id.*).

To satisfy the money judgment against Defendant Kogan, the Government seeks the forfeiture of his legal right, title, and interest in certain real property located at 124 Stanie Brae Dr., Watchung, New Jersey 07069 and recorded as Block 1004, Lot 6 in Somerset County, City of Watchung, State of New Jersey (the "Kogan Property"), pursuant to 21 U.S.C. § 853(p). (Kogan Forfeiture Order 2). To satisfy the money judgment against Defendant Hasan-Hafez, the Government seeks the forfeiture of his legal right, title, and interest in certain real property located at 8845 19th Avenue, Brooklyn, New York 11214 and recorded as Block 6465, Lot 94 in Kings County, City of Brooklyn, State of New York (the "Hasan-Hafez Property," and together with the Kogan Property, the "Substitute Assets"), also pursuant to 21 U.S.C. § 853(p). (Hasan-Hafez Forfeiture Order 2).

1.  **Petitioner Irina Kogan**

In her petition and request for hearing pursuant to 21 U.S.C. § 853(n)(2), Irina Kogan asserts her ownership interest in the Kogan Property. (Kogan Pet. ¶ 4). Pursuant to 21 U.S.C. § 853(n)(6), Kogan claims that her legal right to the Kogan Property was superior to Defendant Kogan's at the time he committed the acts giving rise to forfeiture. (*Id.* at ¶ 11).

Irina Kogan is a resident of New Jersey. She and Defendant Kogan have been married since September 2006. (Kogan Pet. ¶ 6). Together, the Kogans purchased the Kogan Property on or about August 8, 2014, and have held title

3

to the property ever since. (*Id.*). Though the Kogan Property was purchased after Defendant Kogan's criminal conduct began, Kogan maintains that the Property cannot fairly be considered the proceeds of any such conduct. (*Id.* at ¶ 8).[2] Kogan further asserts that New Jersey recognizes her ownership interest in the Kogan Property as constituting a tenancy by the entirety. (*Id.* at ¶ 9). *See also* N.J. Stat. Ann. § 46:3-17.2 (2022) ("A husband and wife together take title to an interest in real property or personal property under a written instrument designating both of their names as husband and wife.").

### 2. Petitioner Gelan Abdrabo

In her petition and request for hearing pursuant to 21 U.S.C. § 853(n)(2), Abdrabo asserts an ownership interest in the Hasan-Hafez Property. (Abdrabo Pet. ¶ 4). Abdrabo is a resident of New York. She and Hasan-Hafez have been married since October 1996. (Abdrabo Pet. ¶ 6). The pair purchased the Hasan-Hafez Property on or about July 18, 2001, and have held title to the property since that date. (*Id.*). As of February 3, 2021, Abdrabo continued to reside in the home with her five children and disabled mother. (*Id.* at ¶ 8).

---

[2] The Kogan Property was purchased in 2014, after Defendant Kogan's health care fraud began. (Kogan Pet. ¶ 6 ("On or about August 8, 2014, petitioner purchased the home with her husband[.]"); Dkt. #162 at ¶¶1-2 (Defendants engaged in criminal conduct "[f]rom at least in or about January 2010 and including at least in or about August 2013[.]")). However, the Government has not alleged that the Kogan Property was purchased using the proceeds of Defendant Kogan's criminal activities. Indeed, the Government lists both properties as "Substitute Assets," which, by definition, are not derived from the criminal activity underlying a particular case. (Kogan Forfeiture Order 2; Hasan-Hafez Forfeiture Order 2). *Compare* 21 U.S.C. § 853(a)(1) (directing forfeiture of "any property … derived from … proceeds the person obtained, directly or indirectly, as the result of such [criminal] violation"), *with id.* § 853(p)(1) (directing forfeiture of "substitute property" when "any property described in subsection (a)" cannot be obtained).

4

Abdrabo maintains that the Hasan-Hafez Property was not purchased with the proceeds of Hasan-Hafez's criminal conduct. (*Id.* at ¶ 9). She further claims that New York recognizes her ownership interest in her home as constituting a tenancy by the entirety. (Abdrabo Pet. ¶ 10). *See also* N.Y. Est. Powers & Trusts Law § 6-2.2(B) ("A disposition of real property to a husband and wife creates in them a tenancy by the entirety, unless expressly declared to be a joint tenancy or a tenancy in common.").

### B. Procedural Background

The Government's Preliminary Orders of Forfeiture regarding the Substitute Assets were signed on January 6, 2021. (Dkt. #268 (Hasan-Hafez), 269 (Kogan)). On January 29, 2021, in response to the Government's Preliminary Order of Forfeiture as to the Kogan Property, Kogan filed a petition requesting a hearing. (Kogan Pet. ¶ 11). Abdrabo then filed a petition in response to the Government's Preliminary Order of Forfeiture as to the Hasan-Hafez Property on February 3, 2021, also requesting a hearing. (Abdrabo Pet. ¶ 15).

The Government filed motions for judgment on the pleadings with respect to these petitions on February 16, 2021 (Gov't Kogan Br.), and February 18, 2021 (Gov't Abdrabo Br.). Separately, on March 2, 2021, Wells Fargo filed a Victim Petition in response to each Preliminary Order of Forfeiture. (Dkt. #289 (Kogan), 290 (Hasan-Hafez)). Kogan filed a memorandum of law in opposition to the Government's motion for judgment on the pleadings on March 9, 2021. (Kogan Opp.). Abdrabo filed a memorandum

of law in opposition to the Government's motion for judgment on the pleadings and a cross-motion for summary judgment on March 11, 2021. (Abdrabo Opp.). The Government filed a combined brief in response to both Petitioners on March 22, 2021. (Gov't Reply). The Court then granted both Petitioners leave to file a three-page sur-reply. Petitioner Kogan filed her sur-reply on March 31, 2021 (Dkt. #307), and Petitioner Abdrabo filed her sur-reply on March 30, 2021 (Dkt. #306). Accordingly, these motions are now fully briefed and ripe for this Court's consideration.

## DISCUSSION

**A.   Applicable Law**

    **1.   Property Rights Under State Law**

"Property interests are created and defined by state law." *Butner* v. *United States*, 440 U.S. 48, 55 (1979). In relation to forfeiture proceedings specifically, this principle is controlling. *Willis Management (Vermont), Ltd.* v. *United States*, 652 F.3d 236, 242 (2d Cir. 2011) (in resolving a forfeiture proceeding, the Second Circuit held that "state law determines a petitioner's legal interest in the property at issue"). Accordingly, to determine Petitioners' interests in their homes, the Court will apply the law of the state where each property is located.[3]

---

[3]   The Government acknowledges that Kogan's property interests were created under New Jersey law and Abdrabo's property interests were created under New York law. (Gov't Reply 2 ("The Property interests were created under New York law (for Petitioner Abdrabo) and New Jersey law (for Petitioner Kogan), respectively.")). Thus, the Government has "impli[citly] consent[ed]" to applying New Jersey law to determine the extent of Kogan's interest and New York law to determine the extent of Abdrabo's

6

Under New Jersey law, the formation of a tenancy by the entirety allows a husband and wife to own property together, as a single legal unit, and grants both spouses an interest in the entire estate as well as a right of survivorship in their counterpart's interest. *See Jimenez* v. *Jimenez*, 454 N.J. Super. 432, 436 (App. Div. 2018) ("A tenancy by the entirety is a form of joint property ownership available only to spouses that is created when property is held by a husband and wife with each becoming seized and possessed of the entire estate." (quoting *N.T.B.* v. *D.D.B.*, 442 N.J. Super. 205, 218, 121 A.3d 910 (App. Div. 2015) (internal quotation marks omitted))). Thus, when one spouse dies, the other spouse takes title to the entire property. *N.T.B.*, 442 N.J. Super. at 219. Notably, each spouse maintains an "undivided interest … that encompasses the entire property" and "holds his or her title independently of the other[]." *State* v. *Reiter*, No. A-2167-18T3, 2020 WL 224595, at *6 (N.J. App. Div. Jan. 15, 2020). Accordingly, "neither [spouse] may force the involuntary partition of the subject property during the marriage." *Jimenez*, 454 N.J. Super. at 436 (quoting *N.T.B.*, 442 N.J. Super. at 227) (internal quotation marks omitted)); *see also* N.J. Stat. Ann. § 46:3-17.4 (2022) ("Neither spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of both spouses.").

---

interest. *Krumme* v. *Westpoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2020) (explaining that the parties' "implied consent…is sufficient to establish choice of law").

Tenancies by the entirety operate in a substantially similar way under New York law, as each spouse maintains a "right to the use of an undivided half of the property during the joint lives of a husband and wife and a survivorship right to the entire fee." *United States* v. *Stern*, No. 16 Civ. 225 (JGK), 2021 WL 3474040, at *3 (S.D.N.Y. Aug. 5, 2021) (quoting *In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989) (internal quotation marks omitted)). New York law recognizes that "tenants by the entirety do not hold partial interests; each owns the whole, subject to the parallel right of his or her spouse." *Promenade Nursing Home* v. *Cohen-Fleisher*, 983 N.Y.S.2d 205, 2013 WL 6331255, at *4 (Sup. Ct. Nov. 1, 2013) (internal citation omitted). As in New Jersey, each spouse has the right to "sell, mortgage, or otherwise encumber his or her rights in the property," but such action is "subject to the *continuing rights of the other*." *Goldman* v. *Goldman*, 95 N.Y.2d 120, 122 (2000) (quoting *V.R.W., Inc.*, 68 N.Y.2d at 565) (internal quotation marks omitted)) (emphasis added).

Accordingly, in both states, a tenancy by the entirety cannot be terminated by one spouse's unilateral action. *See V.R.W., Inc.,* 68 N.Y.2d at 566 n.* ("Indeed, it would make little sense to allow partition at the instance of a third party to whom one spouse has conveyed, since to do so would be, in effect, to authorize the destruction of the nonconveying spouse's possessory rights as a consequence of the unilateral action of the other spouse."); N.J. Stat. Ann. § 46:3-17.4 (2022) ("Neither spouse may sever, alienate, or otherwise affect their interest in the tenancy by entirety during the marriage or upon separation without the written consent of *both* spouses." (emphasis added)).

8

However, "[o]nce the legal relationship between husband and wife is judicially altered through divorce, annulment or legal separation, the tenancy by the entirety converts to a tenancy in common." *Goldman*, 95 N.Y.2d at 122 (internal quotation marks and citations omitted).

The Government contends that its Orders of Forfeiture effectively convert both tenancies by the entirety into tenancies in common. (Gov't Reply 9). A tenancy in common is similar to a tenancy by the entirety in that it gives each co-tenant "an equal right to possess the whole property," but, notably, it grants "no right of survivorship" to either co-tenant, in contrast to a tenancy by the entirety. *In re Heaney*, 453 B.R. 42, 46 (Bankr. E.D.N.Y. 2011).

2.  **Criminal Forfeiture of Real Property Under Federal Law**

The Government seeks forfeiture of the Substitute Assets pursuant to 21 U.S.C. § 853(p). Together, Section 853 and Federal Rule of Criminal Procedure 32.2 create a two-step procedural framework for completing a criminal forfeiture. *See United States* v. *Wolf*, 375 F. Supp. 3d 428, 435 (S.D.N.Y. 2019). *First*, before entering a preliminary order of forfeiture, the court "adjudicate[s] the government's interest vis-à-vis the defendant 'without regard to any third party's interest in the property.'" *Id.* (quoting *United States* v. *Daugerdas*, 892 F.3d 545, 549 (2d Cir. 2018) (internal quotation marks omitted)). *Second*, before entering a final order of forfeiture, the court resolves any petitions made by third parties claiming an interest in the property through an ancillary proceeding. *Id.* If the court finds that the petitioner has proven, by a preponderance of the evidence, that a "legal right, title, or interest in the

9

property was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts," or the petitioner is a *bona fide* purchaser for value, the court will request that the corresponding order of forfeiture be amended. 21 U.S.C. § 853(n)(6).

A central tenet of forfeiture proceedings is that the Government "stands in the defendant's shoes" when it acquires a defendant's interest in a particular property. *United States* v. *Nektalov*, 440 F. Supp. 2d 287, 295 (S.D.N.Y. 2006). Accordingly, "a defendant's consent to forfeit property does not expand the Court's power over that property, if the property is not the defendant's own," since one only has the power to convey or forfeit property to which he holds title. *United States* v. *Egan*, 811 F. Supp. 2d 829, 838 (S.D.N.Y. 2011) (quoting *United States* v. *Schwimmer*, 968 F.2d 1570, 1580-81 (2d Cir. 1992) (internal quotation marks omitted)).

### 3. Motions for Judgment on the Pleadings

The Government moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Gov't Kogan Br. 5; Gov't Abdrabo Br. 5). "The standards to be applied to a motion for judgment on the pleadings are the same as those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Stern*, 2021 WL 3474040, at *3 (citing *Cleveland* v. *Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (internal quotation marks and alterations omitted)). "Thus, a court will accept all factual allegations in the third-party petition as true and draw all reasonable inferences in the third-

party petitioner's favor." *Id.* (quoting *Hayden* v. *Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (internal quotation marks and alterations omitted)); *see generally L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

Abdrabo has also filed a cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. However, the Court agrees with the Government that this motion is "procedurally improper," since no discovery has taken place and Abdrabo has not filed a statement of undisputed facts pursuant to Local Rule of Civil Procedure 56.1. (Gov't Reply 15).[4] As it happens, the Court's resolution of the Government's motions has the practical effect of resolving Abdrabo's motion, since the Court will determine each party's interest in the Hasan-Hafez Property.

## B.  Analysis

The Government does not dispute that Petitioners and Defendants initially held tenancies by the entirety; instead, it contends that the instant forfeiture proceedings should be analogized to a divorce. (*See* Gov't Kogan Br. 1, 9; Gov't Abdrabo Br. 1, 8 ("[W]hen a spouse's interest has been forfeited and the respective interests of the spouses are intertwined, the Court should determine the interest of the other spouse and the Government based on the

---

4       The Government notes that discovery may be needed if the Court chooses to deny its motion for judgment on the pleadings to resolve particular questions. (Gov't Reply 15 n.11). Further, "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." U.S. Dist. Ct. Rules S.&E.D.N.Y., Civ. Rule 56.1.

interest the spouses would have held after a divorce.")). In making this argument, the Government relies on *United States* v. *Totaro*, 345 F.3d 989 (8th Cir. 2003), in which the Eighth Circuit employed the divorce analogy in order to determine a spouse's interest in a property that was the subject of a RICO forfeiture proceeding. (Gov't Kogan Br. 8; Gov't Abdrabo Br. 8). Under this analogy, each tenancy by the entirety would be severed by the Government's forfeiture of the respective Defendant's interest. This would create a tenancy in common held jointly by the Government and each Petitioner, where both the Government and the Petitioner would possess a one-half interest in the corresponding Substitute Asset with no right of survivorship.

The Government argues that its interpretation accords with a fundamental characteristic of tenancies by the entirety: unmarried people cannot hold property in a tenancy by the entirety. (Gov't Kogan Br. 7; Gov't Abdrabo Br. 7). *See also Stern*, 2021 WL 3474040, at *5 ("a tenancy by the entirety cannot exist between unmarried parties"). From this premise, the Government reasons that the forfeiture of Defendants' interests would necessarily sever their respective tenancies by the entirety, inasmuch as two unmarried parties — here, the Government and each Petitioner — may not share such an estate. *See id.*

Petitioners counter that they possess an interest in the entirety of the Substitute Asset as a tenant by the entirety, and that the property accordingly cannot be forfeited. (Kogan Opp. 1, 5-6 ("Mrs. Kogan has an indivisible 100 percent interest in the Home as a tenant by the entirety. That means it cannot

12

be forfeited."); Abdrabo Opp. 19 ("The government cannot force [Mrs. Abdrabo] to sell the home or bother her in any way in her enjoyment of the Home.")). Each Petitioner further notes that she and her spouse have taken no joint action to sever or terminate their tenancy by the entirety, and argues that without such joint action, neither tenancy has been terminated. (Kogan Opp. 19 ("It is black letter law that a tenancy by the entirety can be broken only by death, divorce or the sale of the property on consent of both spouses."); Abdrabo Opp. 7 ("No such joint action has taken place here.")).

Instead, each Petitioner characterizes the Government as a creditor with respect to her spouse's interest. (Kogan Opp. 5-6; Abdrabo Opp. 8, 12). A tenancy by the entirety offers protection to an innocent spouse from a creditor seeking to collect on the debts of her partner. *Jimenez*, 454 N.J. Super. at 438 ("N.J.S.A. 46:3-17.4 precludes the partition and forced sale of real property [by creditors of only the defendant] because [the] defendant and his wife own it as tenants by the entirety."); *Zimler* v. *Silver*, 91 Misc. 2d 452, 455 (N.Y. Sup. Ct. 1977) ("[The judgment creditor] cannot defeat [the plaintiff's] expectancy in the premises nor does the lien of his judgment attach to her interest."). Accordingly, Petitioners argue, the Government is precluded from seeking forfeiture if doing so would extinguish each Petitioner's interest in the entirety of her home. (Kogan Pet. 6; Abdrabo Pet. 19). The Government rejects Petitioners' efforts to construe it as a mere creditor, arguing that the cases cited by Petitioners are inapposite. (Gov't Reply 6). According to the Government, the cases referenced by Petitioners involve money judgments

13

sought by the Government, rather than forfeiture orders, and other "creditors" are not permitted to seek the forfeiture of assets the way the Government is. (*Id.*).

The Government also claims that its view upholds the "remedial purpose of Section 853" by preventing a criminal defendant from evading his forfeiture sanctions by continuing to live with his spouse. (Gov't Kogan Br. 13; Gov't Abdrabo Br. 11). In response, Petitioner Kogan states that the Government is conflating a defendant's ability to continue living in his home with a defendant's proprietary right to possess his home. (Kogan Opp. 20). Petitioner Kogan contends that Section 853(p)'s remedial purpose is served simply by extinguishing Defendant Kogan's ownership rights; whether or not he is able to continue living in his home is "not a proper focus of punishment" under Section 853(p). (Kogan Opp. 20). The Government replies that this interpretation would "render[] the forfeitures a practical nullity and thwart[] the punishment they are designed to inflict for defendants' criminal conduct." (Gov't Reply 1).

The Court finds guidance in Judge Koeltl's opinion in *United States* v. *Stern*, 2021 WL 3474040, at *3, which was issued after briefing in the instant case had concluded. *Stern* involved a similar dispute; a husband (Mr. Stern) and wife (Ms. Stern) held title to their home in a tenancy by the entirety, and after Mr. Stern was convicted of money laundering, the Government issued a Preliminary Order of Forfeiture that listed the home as a substitute asset. *Id.* at *1-2. Ms. Stern asserted an interest in the home, and the Government

14

analogized the effect of the forfeiture proceedings to a divorce, as it did here. *Id.* Judge Koeltl did not accept the analogy, finding unpersuasive the reasoning in *Totaro*. *Id.* at *4 ("The court [in *Totaro*] did not explain why divorce law was the proper frame of reference and did not specifically consider the effect of a tenancy by the entirety.").

Instead, Judge Koeltl conceptualized the forfeiture, for the purposes of determining Ms. Stern's interest, as a voluntary conveyance of the defendant's interest in his home from the defendant to the Government. *Stern*, 2021 WL 3474040, at *5. Under this interpretation, Mr. Stern necessarily severed his tenancy by the entirety by transferring his interest to the Government and effectively creating a joint title shared by unmarried parties. *Id.* ("The touchstone of a tenancy by the entirety is a symmetric property ownership between married spouses; after the criminal forfeiture, that symmetry has been destroyed, and the tenancy by the entirety cannot continue."). Still, Mr. Stern's conveyance did not, and could not, destroy his wife's right of survivorship, tied to his life, in their home. *Id.* at *4-5 ("While Mr. Stern also had a right to survivorship tied to Ms. Stern's life, the survivorship right tied to his life belongs to Ms. Stern rather than Mr. Stern. The Government cannot take, and Mr. Stern cannot forfeit, an interest that does not belong to Mr. Stern."). In other words, though Mr. Stern had the ability to transfer his interest to another party, he did not have the ability to unilaterally destroy Ms. Stern's right of survivorship. *Id.*; *see also V.R.W., Inc.*, 68 N.Y.2d at 564 ("It is well established that a conveyance by one tenant, to which the other has not consented, cannot

15

bind the entire fee or impair the nonconsenting spouse's survivorship interest."). Accordingly, Judge Koeltl found that upon the entry of the Government's Preliminary Order of Forfeiture, Ms. Stern and the Government held the substitute asset as tenants in common, with both parties having a right of survivorship inhere in the property — the Government's right of survivorship was tied to Ms. Stern's life, while Ms. Stern's right of survivorship was tied to Mr. Stern's life. *Stern*, 2021 WL 3474040, at *5.[5]

Judge Koeltl's analysis in *Stern* is persuasive because it harmonizes two legal principles that are central to the dispute at hand. *First*, his decision to conceptualize the Government and Ms. Stern as tenants in common gives legal effect to the precept that tenancies by the entirety cannot be held by unmarried parties. *See Stern*, 2021 WL 3474040, at *5. *Second*, Judge Koeltl's resolution upholds the equally important principle that a person cannot convey, alter, or extinguish property interests that do not belong to him. *V.R.W., Inc.*, 68 N.Y.2d at 568 ("[A] spouse who has not alienated his or her interest in a tenancy by the entirety should not suffer any impairment of rights as a result of the other spouse's actions[.]"). Mr. Stern could not unilaterally sacrifice his wife's survivorship right, because it is vested exclusively in her. *Stern*, 2021 WL 3474040, at *5. Judge Koeltl's decision balances the positions of the

---

[5]  In determining the interests held by a debtor's wife and a judgment creditor in a vacation home, a New Jersey court reached a similar result by finding that the debtor's wife and the creditor shared a tenancy in common with mutual rights of survivorship. *See Cap. Fin. Co.* v. *Asterbadi*, 389 N.J. Super. 219, 230, 912 A.2d 191 (Ch. Div. 2006) ("[I] consider this arrangement…to be a tenancy in common with a right of survivorship, which, despite its relatively oxymoronic phraseology, is not an unprecedented result." (internal quotation marks, alterations, and citations omitted)).

16

Government and the spouse in a manner that honors the fundamental characteristics of a tenancy by the entirety, while respecting the principle that only criminal wrongdoers should be subjected to punishment by the Government. Thus, the Court adopts Judge Koeltl's approach.

Even if the Court were to conceptualize the Government as a creditor as to each Defendant's interest in his respective Substitute Asset, its determination of each party's interest would be unaffected. Both the Government and Petitioners would still possess rights of survivorship, and the joint estate they share would still be a tenancy in common rather than a tenancy by the entirety. Accordingly, the Court finds that the Preliminary Orders of Forfeiture must be amended to (i) reflect that the Government and each Petitioner hold title to the Substitute Assets as co-tenants sharing a tenancy in common; and (ii) include references to the Government's right of survivorship tied to Petitioners' lives, and Petitioners' rights of survivorship tied to Defendants' lives.

As to Wells Fargo's Victim Petitions, the Government acknowledges that Wells Fargo maintains a "valid mortgage interest" in both Substitute Assets under Section 853(n)(6). (Dkt. #293). The Court agrees and directs the Government to amend both Orders of Forfeiture to include Wells Fargo's mortgage interests. *Id.*

**CONCLUSION**

For the reasons discussed, the Government's motions for judgment on the pleadings are DENIED and Petitioner Abdrabo's cross-motion for summary judgment is DENIED. The Government is directed to submit proposed Amended Orders of Forfeiture as to Substitute Assets consistent with this Opinion and Order by **September 9, 2022**. The Clerk of Court is directed to terminate the pending motions at docket numbers 283, 284, and 294. The Clerk of Court is further directed to terminate the pending motion at docket number 303, which motion was resolved at docket number 305.

SO ORDERED.

Dated:     August 15, 2022
           New York, New York

                                             _____
                                              KATHERINE POLK FAILLA
                                              United States District Judge